[Civ. No. 9593. Fourth Dist., Div. One. Mar. 17, 1970.]

GEORGE F. KENNEDY, INC., Plaintiff and Respondent, v.
MILES AND SONS CONSTRUCTION DIVISION,
Defendant and Appellant.

## Counsel

Thelen, Marrin, Johnson & Bridges, Robert B. Flaig and James M. Radnich for Defendant and Appellant.

Horton, Knox, Carter & Foote and Orlando B. Foote for Plaintiff and Respondent.

## OPINION

COUGHLIN, J.—Defendant, a prime contractor on a state highway project, appeals from a judgment in favor of plaintiff, a supplier of tires and tire services, in an action following stop notice proceedings pursuant to Code of Civil Procedure sections 1190.1 and 1192.1.

We reverse upon the ground the evidence is insufficient as a matter of law to support material findings. Determinative of the appeal is the lack of any substantial evidence establishing (1) Fratiano Trucking Company, the recipient of plaintiff's tires and tire services, was a subcontractor under defendant as distinguished from a supplier of trucking services to defendant; and (2) the tires and tire services furnished by plaintiff were used up in the highway project.

Under a prime contract between defendant and the State of California the former agreed to furnish, among other things, dirt fill for a highway project. Commencing in the latter part of March 1966 or the first part of April 1966, Fratiano Trucking Company was employed by defendant to haul dirt fill for the project. This employment continued until the first part of August 1966. Fratiano was only one of several trucking firms hauling dirt fill. Pursuant to the prime contract defendant was required to furnish 1,400,000 tons of dirt fill at a prescribed rate per ton. Fratiano and the other trucking firms worked for defendant on an hourly basis. There is no evidence respecting the number of tons of dirt hauled by the Fratiano trucks or the number of hours those trucks were engaged in hauling. Likewise, there is no evidence respecting the number of tons of dirt hauled by other trucks or the number of hours those trucks were engaged in hauling.

Plaintiff furnished Fratiano with tires and tire services in connection with the operation of its trucks. The amount of plaintiff's claim, for which it filed a stop notice, was $6,561.13. Invoices offered in evidence in support of the claim showed some of the tires had been furnished Fratiano before the latter's employment by defendant, and also showed some of the tires were furnished Fratiano after its employment terminated.[1] The evidence shows some of the tires furnished were used up during the period of Fratiano's employment by defendant. However, the evidence does not show all of the tires furnished were used up during this period. It is impossible to determine from the evidence what tires had been used up;

---

[1] The invoices were marked for identification but not admitted in evidence, the court reserving and never making a ruling on an objection to their admission. A ledger sheet indicates the tires purchased before employment subsequently were paid for in full.

what tires had not been used up; and what portion of use, if any, remained upon termination of the employment. Different invoices showed, respectively, tires placed on an automobile not used in the project; tires placed on a rented automobile; tires delivered to someone else at the request of Fratiano; the repair of tires without a showing whether the need for repair was occasioned by use of the tires on the project; and delivery of parts and equipment which, by their nature, could not be used up during the period of employment. One of plaintiff's witnesses testified he had no way of knowing whether all of the tires were used up on the job. Another witness testified he did not know how long the tires sold to Fratiano would last except that they could be used for thousands of miles. There is no evidence respecting the mileage of any of the Fratiano trucks while hauling dirt for defendant. Although there is evidence supporting an inference some of the tires sold to Fratiano were placed on trucks used in hauling dirt for defendant, it is not shown all of the tires sold Fratiano were placed on trucks used in the project.

■ A person furnishing labor or materials used in, upon, for, or about the performance of public work may avail himself of the stop notice procedure under Code of Civil Procedure section 1192.1 providing he furnished the work or material at the instance of the prime contractor or a subcontractor having charge, in whole or in part, of the project. (*Theisen* v. *County of Los Angeles,* 54 Cal.2d 170, 177 [5 Cal.Rptr. 161, 352 P.2d 529].) ■ A controlling issue for determination in the case at bench is whether Fratiano was a subcontractor for stop-notice purposes or merely a supplier of trucking services. In *Theisen* v. *County of Los Angeles, supra,* 54 Cal.2d 170, 183, the court declared: "[O]ne who agrees with the prime contractor to perform a substantial specified portion of the work of construction which is the subject of the general contract in accord with the plans and specifications by which the prime contractor is bound has 'charge of the construction' of that part of the work of improvement . . . and is a subcontractor. . . ." The term "substantial" as used in the foregoing definition "means 'important' or 'material'." (*Piping Specialties Co., Inc.* v. *Kentile, Inc.,* 229 Cal.App.2d 586, 589 [40 Cal.Rptr. 537].) ■ The trial court found Fratiano "was employed by defendant . . . to perform a definite, substantial part of the construction" of the state project under consideration "in accordance with the plans and specifications of a contract" between defendant and the State of California. The plans and specifications of the contract between defendant and the state are not in evidence. Even assuming the contract between defendant and the state obligated defendant to haul dirt, whether Fratiano was employed "to perform a substantial specified portion" thereof is not determinable from the evidence. ■ Material to the judgment is a finding of facts supported

by substantial evidence warranting the conclusion plaintiff furnished tires and tire services to Fratiano as a subcontractor. (*Theisen* v. *County of Los Angeles, supra,* 54 Cal.2d 170, 177, 183; *Blakemore Equpiment Co.* v. *Braddock, Logan & Valley,* 269 Cal.App.2d 12, 14 [74 Cal.Rptr. 484]; *Piping Specialties Co., Inc.* v. *Kentile, Inc., supra,* 229 Cal.App.2d 586, 588.) The court, as a conclusion of law, declared Fratiano was a subcontractor. The finding aforesaid is without evidentiary support. As a consequence, the conclusion of law is without factual support.

■ Furthermore, the stop notice procedure provided by Code of Civil Procedure section 1192.1 is not available to a person furnishing materials or services to a subcontractor under a state work project unless the materials and services are "used in, upon, for, or about the performance" of the work. The trial court found plaintiff supplied tires and tire services to Fratiano in the sum of $6,561.13 which were used in connection with the state project. ■ Where materials furnished a subcontractor become a part of the subcontractor's general equipment and are of such a nature that in the usual course of events they will not be entirely used and consumed on the job for which they were purchased, a claim therefor is not subject to the statutory stop notice procedure. (*A. L. Young Machinery Co.* v. *Cupps,* 213 Cal. 210, 213 [2 P.2d 321].) Where only a part of the material furnished a subcontractor is used in performance of the latter's contract, the remainder being diverted to other uses, and it is impossible to estimate what part was used in performance of the contract, a claim therefor is not within the scope of the statutory stop notice procedure. (*Hammond Lbr. Co.* v. *Pyle,* 202 Cal. 624 [262 P. 715].) ■ The tires furnished Fratiano became a part of the latter's equipment and the evidence furnishes no basis for the conclusion all of them, in the usual course of events, would be or were used up in the hauling for defendant.[2] Also some of the tires for which plaintiff claims payment were furnished Fratiano after termination of its employment by defendant; and some tires were purchased for purposes other than use in hauling dirt for defendant. The decisions in *Gurley Lord Tire Co.* v. *Newgard,* 10 Cal.App.2d 38 [50 P.2d 1043] and *McCormick Saeltzer Co.* v. *Haidlen,* 119 Cal.App. 96, 100 [6 P.2d 255], cited by plaintiff in support of the judgment, clearly are not applicable to the situation at bench because they concern the recovery of rental for material used in a construction project rather than the purchase price thereof. The finding the tires and tire services in the amount of the award were used in the state project is not supported by substantial evidence.

---

[2]The ledger sheets marked for identification show that after June 30, $5,204.27 was charged to Fratiano's account. It is unreasonable to infer the tires represented by these entries were used up by Fratiano during the following month, at the end of which its employment terminated.

Plaintiff obtained a personal judgment against Fratiano for the value of the tires and tire services in question. Defendant contends obtaining such a judgment bars recovery under the stop notice procedure. The contention is without merit. The right to sue Fratiano personally and the right to use the stop notice procedure were cumulative remedies pursuable simultaneously or independently of each other. (Code Civ Proc., § 1200; *Culbertson* v. *Cizek*, 225 Cal.App.2d 451, 468 [37 Cal.Rptr. 548]; *Homestead Sav. & Loan Assn.* v. *Superior Court*, 195 Cal.App.2d 697, 700 [16 Cal.Rptr. 121].) We reject the opinion to the contrary in *Mitchell* v. *Shoreridge Oil Co.*, 24 Cal.App.2d 382·[75 P.2d 110], in light of the fact the Supreme Court, in denying the petition for hearing therein, withheld its approval of that portion of the opinion.

Defendant also contends there is no evidence showing plaintiff complied with the stop notice provisions of Government Code section 4210. The state of the record in this matter presents a confusing situation subject to clarification upon retrial, and for this reason we make no determination respecting the issue.

The judgment is reversed.

Brown (Gerald), P. J., and Whelan, J., concurred.